Elaine STEWART, in her individual capacity, as the lawful wife, personal representative and next of friend of Clarence Edward Stewart, deceased, Plaintiff–Appellee,

v.

PRINCE GEORGE'S COUNTY, MARYLAND; Stephen A. Vitko, individually and as a police officer in the Prince George's County, Maryland Police Department; Darryl R. Pollock, individually and as a police officer in the Prince George's County, Maryland Police Department; Ryan D. Chambers, individually and as a police offi-

cer in the Prince George's County, Maryland Police Department; Michael S. Rose, individually and as a police officer in the Prince George's County, Maryland Police Department, Defendants–Appellants,

and

Prince George's County Police Department; Troy L. Wallace, individually and as a police officer in the Prince George's County, Maryland Police Department; John Doe; Jane Doe; Others Unknown; Target Stores, Incorporated, as a corporation doing business in the State of Maryland; Target Corporation, a corporation doing business in the State of Maryland; Target Security Staff, in their individual capacity and as employees of Target Stores, Incorporated; Corney Patrick Britton, Defendants.

No. 02–2071.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 2003.

Decided Sept. 23, 2003.

**ARGUED:** Crystal Renee Mittelstaedt, County Attorney's Office, Upper Marlboro, Maryland, for Appellants. Harry Truman Spikes, Washington, D.C., for Appellee. **ON BRIEF:** Jay H. Creech, Acting Deputy County Attorney, Laura J. Gwinn, Upper Marlboro, Maryland, for Appellants.

Before WILKINSON, NIEMEYER, and TRAXLER, Circuit Judges.

Reversed and remanded by unpublished PER CURIAM opinion.

## OPINION

PER CURIAM.

Plaintiff-appellee Elaine Stewart, acting individually and as next friend and representative of her deceased husband, Clarence Stewart, brought constitutional and state-law claims against Prince George's County, Maryland (PGC), PGC's police department, several individual PGC officers, Target Stores, Inc., and several Target employees (collectively, the "defendants" or "appellants"), in connection with her

husband's death. After a hearing on the defendants' motion for summary judgment, the district court granted in part and denied in part the motion, setting for trial the plaintiff's federal and state law claims, the latter including wrongful death, loss of consortium, assault and battery, and false arrest. For the reasons set forth below, we reverse the district court's denial of summary judgment as to the section 1983 claims and remand the case to the district court.

## I.

This case involves the death of Clarence Stewart, which occurred while he was being taken into custody by law enforcement officers. At the summary judgment hearing, the decedent's representative submitted evidence from several individuals who stated that they had seen the incident and that the police had used excessive force. The officers' evidence was quite to the contrary. What makes this case unusual is that video cameras at the store recorded enough of the scene to corroborate what the officers said happened and to refute thoroughly the version presented by the decedent's estate.

The facts leading to the incident are not really in dispute. On May 19, 2000, Clarence Stewart made a number of visits to a Target store in Upper Marlboro, Maryland. On one of these occasions he went to the jewelry counter where he spoke to a Target employee, Renee Dancy, in a manner she found offensive and threatening. Stewart was asked by Target security personnel to leave the store and not to return. Stewart nevertheless returned several times. Target contacted the police around 1:15 p.m., but no officers were dispatched. At around 3:00 p.m., Target called the police again because Stewart was persisting in his disruptive and threatening behavior. This time, a PGC officer, Stephen Vitko, was dispatched and advised of a disorderly individual who had been throwing items at a cashier. Based on a detailed description, Vitko located Stewart at a nearby store. When Vitko confirmed that Stewart was the person about whom the call had been made, the two men returned to Target so that Stewart could apologize to the employee. Stewart was advised in Vitko's presence by another Target employee not to return to the store. Vitko warned Stewart that if he did so, he would be arrested. On the Target surveillance videotape, Vitko and Stewart can be seen entering the store, walking side-by-side to the jewelry section, and then leaving. Vitko is not touching Stewart at any time in these pictures. Within minutes of leaving the store with Vitko, Stewart reentered Target and again headed for the jewelry section and Dancy. He was intercepted by a security officer and escorted out, an episode that is also clearly recorded on videotape. Another call was placed and Vitko returned to the scene a few minutes later.

What happened upon Vitko's return to the store is at the heart of the case. Vitko, other officers, and Target employees gave evidence that the following occurred: Vitko found Stewart at a nearby store and walked with him back to Target, where the two were met just outside the main entrance by two Target employees, Corney Britton and Marsha Johnson. The videotape shows Vitko and Stewart on the sidewalk outside Target walking toward the store, with Vitko in front, and no physical contact between Vitko and Stewart. Vitko indicated that he would write a citation for Stewart, and he asked Britton if he could use the Target security room. Britton agreed, and he and Johnson accompanied Stewart to the room, while Vitko returned to his cruiser to obtain his citation book. The videotape shows Stewart and the two

employees entering the store. Vitko is also seen at the front of the store walking to his cruiser, speaking to another individual, then reentering the store about a minute later.

According to Vitko, Vitko entered the security room a few minutes later and explained to Stewart the reason for the citation. While Vitko was filling out the citation, Stewart became agitated and refused to provide information Vitko requested. Stewart continued to be uncooperative and began to gesture threateningly at Vitko, who informed him that, if Stewart persisted, he risked being placed under arrest. A melee ensued, during the course of which Vitko frantically radioed his dispatcher for assistance. Vitko's request for help was captured on audiotape maintained routinely by the police dispatcher. Vitko repeated his instructions to Stewart to cooperate, but Stewart lunged for him. Vitko administered pepper spray and several blows with his ASP baton. About five minutes into the struggle, Ryan Chambers, another PGC officer, got to the store, went to the security room, and assisted Vitko in subduing Stewart. Chambers' arrival and entry are recorded on the videotape. Stewart continued to resist and, although the two officers managed to wrestle him to the ground, they were unable to handcuff him. A few minutes later, as also shown on the videotape, Officers Darryl Pollock, Michael Rose, and Troy Wallace arrived at the store and were directed by Target personnel to the security room. Together, the officers managed to cuff Stewart behind his back, by which time Stewart had been sprayed repeatedly in the face with pepper spray and had sustained several additional blows from ASP batons. Not long afterwards, while handcuffed, Stewart was brought out of the security room into the public area of the store where he subsequently went into cardiac arrest.

The officers summoned medical assistance, but Stewart died en route to the hospital.

Stewart's three witnesses describe a very different scene. Eugene Thomas testified at his deposition that Vitko grabbed Stewart by the arm outside the store and manhandled him into the store with the assistance of the two Target employees. Once inside the store, Thomas claims that the three began immediately to pummel Stewart. According to Thomas, another officer joined the fray while Stewart, lying defenseless on the ground, cried out for the police to stop. Thomas also emphasized that Stewart was never in the Target security room, but rather the episode occurred outside in a hallway at the front of the store and in plain view of Target's eating area, also located at the front of the store. Shawn Reeves, who worked with Thomas and was with him that day, testified that Vitko rough-handled Stewart just inside the door of Target and kept his hands on Stewart throughout the episode. Unlike Thomas, however, Reeves claims that Vitko met the Target employees inside the store and that there the three immediately began to beat an entirely submissive Stewart. Both Thomas and Reeves produced affidavits (with nearly identical wording) that do not make clear whether they are describing the incident itself, the videotape footage from Target which they had reviewed, or a mixture of the two. However, both stated that Stewart was beaten in plain view of many witnesses just in front of the eating area at the front of the store. The third witness, Edward Hickey, testified at his deposition that he watched Vitko grab Stewart in the parking lot, jerk him back and forth, and—still holding him—march Stewart into the Target store.

Based on the testimony of these witnesses, Stewart's wife initiated this suit against the officers, the county, the police

department, Target, and its employees, claiming numerous violations of her husband's rights under federal and state law. At the hearing on the defendants' motion for summary judgment on their claim of qualified immunity, the court ruled that a trial was necessary, stating: "I think we can assume that when people go into Target that they won't come out dead." J.A. 68.* This appeal followed.

## II.

We review the denial of a motion for summary judgment de novo. *See Higgins v. E.I. DuPont de Nemours & Co.,* 863 F.2d 1162, 1167 (4th Cir.1988). Where the moving party has identified portions of the record "which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the nonmoving party must then come forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e). In determining whether summary judgment is appropriate, we evaluate "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party." *Id.* at 250.

Because the defendants claimed qualified immunity as a defense, we must employ the two-step qualified immunity analysis. *See Saucier v. Katz,* 533 U.S. 194,

200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, we must determine if, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show [that] the officer's conduct violated a constitutional right." *Saucier,* 533 U.S. at 201. If not, our inquiry is at an end. *See id.* If so, "then the next step is to ask whether the constitutional right was clearly established in the specific context of the case." *Figg v. Schroeder,* 312 F.3d 625, 635 (4th Cir.2002) (internal quotation marks omitted).

The Fourth Amendment prohibits unreasonable seizures of citizens by the police. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Jones v. Buchanan,* 325 F.3d 520, 527 (4th Cir.2003). A court determines whether an officer has used excessive force to effect a seizure based on a standard of "objective reasonableness." *Graham,* 490 U.S. at 399. This evaluation calls for the consideration of the facts "from the perspective of a reasonable officer on the scene," *id.* at 396, and accepts that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," *id.* at 397.

In this case, the decedent's estate has produced three witnesses who state that excessive force was used by the officers. The defendants have produced evidence to suggest that officers Vitko, Chambers, Wallace, Pollock, and Rose acted reasonably under the circumstances with which they were confronted. Normally, these differences would require the denial of the officers' motions for summary judgment. But this is not the normal case; here, the videotaped footage confirms enough of the

---

* The district court refused to consider a memorandum submitted by the plaintiff because it exceeded the page limit set by local rule; however, the court did consider the affidavits attached by the plaintiff to the memorandum.

officers' testimony and destroys enough of the supposed eyewitnesses's version to require that judgment be given to the officers.

Specifically, Stewart relies on the depositions and affidavits of Reeves, Thomas, and Hickey as evidence that excessive force was used against the decedent. First, we note that Reeves and Thomas provided affidavits which are nearly verbatim replicas of one another and which do not distinguish clearly between what the men saw when they reviewed the videotape and what they actually saw in person. Nevertheless, what the video shows does not support the version of Reeves and Thomas that the fight between Stewart and Vitko took place in the public area at the front of the store. Admittedly the video does not cover the exact spot at the front of the store pinpointed by Reeves and Thomas, but it does cover the rest of the public area at the doors and to within a few feet of where Reeves and Thomas say this all happened. Specifically the video shows people coming in and going out of the front doors in an area right next to where Reeves and Thomas say this fight was going on between a police officer and a civilian involving the use of pepper spray and blows with a police baton. But the video shows customers walking normally to and fro, pulling out shopping carts, and going on about their business with not one person ever looking in the direction of the alleged public fight. Likewise, employees move through without so much as pausing or, for that matter, hastening past the scene. No one lingers and looks in the direction of the alleged incident. Nor does anyone rush past. From this, the only reasonable inference that can be drawn from the videotape is that nothing unusual is going on where these witnesses claim it did, much less a beating of a person by the police. Simply put, the videotape, marked by an uninterrupted clock time stamp,

plainly contradicts their assertion, and no reasonable juror could credit the testimony of these witnesses. *See Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 818 (4th Cir.1995) (explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of reasonable probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)).

When challenged at the hearing on the summary judgment motion as to why the videotape was inconsistent with his witnesses' testimony, counsel for Stewart replied that "the tape is 'lying.'" J.A. 58. Counsel for Stewart, however, has not offered any evidence to suggest exactly how the videotape is "lying" and we see no basis to indulge in speculation ourselves. *See D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."). In our view, no reasonable jury could credit an unsupported suggestion that onlookers were somehow edited out of the videotape. *See Causey v. Balog,* 162 F.3d 795, 802 (4th Cir.1998) (affirming grant of summary judgment because the plaintiff's "conclusory statements, without specific evidentiary support," were insufficient to create a genuine issue of fact); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985) (explaining that the party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").

Second, the deposition testimony advanced by Reeves, Thomas, and Hickey is flatly contradicted by the video, which plainly shows that, contrary to what Reeves, Thomas, and Hickey allege, Officer Vitko was not pushing, grabbing, or jerking Stewart as the two men reentered Target. The tape also makes plain that, unlike the scene Reeves and Thomas have described, no one administered a beating to Stewart in front of the shopping carts at the front entrance. In his deposition, Thomas emphasized that Stewart never entered the security office, but was brutalized outside in plain view of many witnesses by officer Vitko and the Target employees. The objective evidence in the record, however, shows otherwise. In particular, there was uncontradicted evidence that traces of Stewart's blood were found in the security room, as was Vitko's citation book, and the PGC police dispatcher was told during the incident by an obviously panicking Vitko that he was struggling with Stewart inside the office. In light of this evidence, we cannot conclude that Thomas's affidavit creates a genuine issue of fact. *See Sylvia Dev. Corp.*, 48 F.3d at 818 (explaining that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)).

The affidavits and deposition testimony of Reeves, Thomas, and Hickey simply do not raise a genuine issue of material fact as to the existence of a constitutional violation since the only evidence that could reasonably be believed was that produced by the defendants. The defendants' evidence is consistent with the videotape, the audiotape, and all of the physical evidence found at the scene. The videotape makes plain that Vitko and Stewart reentered the store without any physical coercion. Physical evidence, radio communications between the officers and police dispatchers, and the testimony of the other eyewitnesses indicate that the Target security room was the site of the struggle between Stewart and the PGC officers and that the officers on site used reasonable force under the circumstances.

### III.

In short, the officers were entitled to qualified immunity from Stewart's section 1983 claim because she cannot prove the violation of a constitutional right. We therefore reverse the district court's order denying summary judgment and we remand with instructions to enter judgment for the defendants on Stewart's section 1983 claims. Accordingly, the judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.

*REVERSED AND REMANDED.*